**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Opera Company, an Arizona non-profit corporation, ) ) ) | No. CV 06-988-PHX-JAT |
| Plaintiff, ) ) | **ORDER** |
| vs. ) ) | |
| AZ Opera Company, an Arizona non-profit corporation; et al., ) ) ) | |
| Defendants. ) ) ) | |

Currently pending before the Court are Plaintiff Arizona Opera Company's Motion for Default Judgment as to Defendant AZ Opera Company (doc. #41), Motion for Summary Judgment (doc. #42), Second Motion for Default Judgment as to John and Gail Massaro (doc. #47), and Motion for Ruling re Plaintiff's Motion for Summary Judgment (doc. # 50), and Defendants' Motion for Leave to File Answer Out of Time, And To Set Aside the Entry of Default Judgment (doc. #48). The Court now rules on the motions.

**I.  BACKGROUND**

Plaintiff Arizona Opera Company ("Arizona Opera") filed this suit on April 4, 2006 against AZ Opera Company ("AZ Opera") and John and Gail Massaro seeking injunctive and monetary relief for Defendants' use of the name AZ Opera company. Defendant John Massaro is Arizona Opera's former chorus master. Mr. Massaro left Arizona Opera in

dissatisfaction and incorporated under the name AZ Opera on January 17, 2006. He then demanded that Arizona Opera cease and desist from using his name.

Arizona Opera served the Defendants with the Complaint and Motion for Preliminary Injunction on April 11, 2006 (doc. #s 9 & 10). In response, Mr. Massaro sent an email to Plaintiff's counsel and filed a copy with the Court, but never properly answered the Complaint. Because Defendants never properly answered, Arizona Opera filed for an Application for Entry of Default on May 8, 2006. On May 22, 2006, the Court held that Mr. Massaro's email did not constitute a proper answer, but denied the application for default and ordered Defendants to answer or otherwise defend the action as allowed by the rules within 10 days of the Order.

Also on May 22, 2006, Defendants filed a response to the Motion for Preliminary Injunction. Defendants claim they thought this filing complied with the Court's Order of the same day to answer. Plaintiff's counsel counters that Defendants, who do not receive electronic notifications, could not have intended the response to the preliminary injunction motion to meet the requirements of the Court's May 22 Order to answer because Plaintiff's counsel did not email a copy of the Order to Defendants until May 23, 2006.

On June 19, 2006, Plaintiff filed a motion for entry of default against the Massaros (doc. #17). The Court held a preliminary injunction hearing on July 6, 2006. The Massaros attended the hearing. The Court issued a preliminary injunction against Defendants on July 14, 2007. Defendants allege that they amended the articles of incorporation of AZ Opera to change the name from AZ Opera Company to Phoenix Metropolitan Opera Company on July 31, 2006. On August 22, 2006, Plaintiff moved for entry of default against AZ Opera Company. The Clerk of the Court entered default as to all Defendants on August 29, 2006.

By February 28, 2007, Plaintiff had not moved for entry of default judgment against Defendants, so the Court ordered Plaintiff to appear and show cause why the Court should not dismiss the case for lack of prosecution. In response, Plaintiff filed a motion for default judgment as to Defendant AZ Opera Company (doc. #41) on the same day. Plaintiff next filed a motion for Summary Judgment (doc. #42) on March 5, 2007. The Court held the

show cause hearing on March 12, 2007, and ordered Plaintiff to file for default judgment against the Massaros.

Defendants AZ Opera Company and the Massaros, after learning of the show cause hearing, hired counsel and attempted to file an answer to the Complaint (doc. #44) on March 23, 2007 and again (doc. #46) on March 26, 2007. Because entry of default has been entered as to all Defendants, Defendants could not file an answer in this case. The Court therefore strikes the answer at Document #46.

Plaintiff filed a motion for default judgment (doc. #47) as to the Massaros, per the show cause hearing order, on March 26, 2007. On March 30, 2007, Defendants filed a Motion for Leave to File Answer Out of Time, and To Set Aside the Entry of Default Judgment (doc. #48). Plaintiff filed a Motion for Ruling regarding Plaintiff's Motion for Summary Judgment (doc. #50) on April 2, 2007.

Defendants claim that they did not receive notice of any motions, hearings, or orders in this case after July 31, 2006 until they received notice of the March 12, 2007 Order. Defendants imply that Plaintiff did not send them a copy of any filings during that time period. While this may be true, although the Court doubts it, the Court's review of the docket sheet reveals that the Court sent notice to Defendants of orders during that time. The court-use-only view of the docket sheet indicates that the Court mailed a copy of the Clerk's Entry of Default (doc. #39) to Defendants on August 30, 2006 and a copy of the Order setting the show cause hearing (doc. #40) to Defendants on February 28, 2007. So, even if Plaintiff did not send notice to Defendants, the Court did.

**II. ENTRY OF DEFAULT**

Defendants have moved for leave to file their Answer out of time pursuant to Federal Rule of Civil Procedure 6. Rule 6 allows for an enlargement of the prescribed amount of time to file, but it does not allow a party to file an answer after the clerk of court has entered default against the party. The proper procedure at this point in the litigation is for Defendants to move to set aside the entry of default. Although Defendants nominally have

moved to set aside the entry of default, they have not articulated the proper standard. Even so, the Court will decide the motion on the merits using the proper legal standard.

The Court may set aside the entry of default if good cause is shown. Fed. R. Civ. P. 55(c). In determining whether good cause has been shown, the Court considers the following factors: 1) whether there was culpable conduct on the part of the defendant; 2) whether any meritorious defenses are available, and 3) whether there is any prejudice to the plaintiff. *See TCI Group Life Insurance Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). "...[T]he party seeking to vacate a default judgment bears the burden of demonstrating that these factors favor vacating the judgment." *Id*. This burden, however, is not "extraordinarily heavy." *Id*. at 700.

Regarding the first factor, "A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." *Id*. at 697. Intentional conduct, in this context, must rise to the level of conduct which is willful, deliberate, or done in bad faith. *Id*. at 697-98. Thus, the behavior must be inexcusable.

Before the preliminary injunction hearing, Defendants did not intentionally fail to answer, they just failed to answer according to the rules of procedure. After the Court entered a preliminary injunction, however, Defendants stopped participating in the case. They claim Plaintiff sent them no notice of filings from mid-July 2006 to March 2008. Even if Plaintiff failed to send notices, Defendants received Orders during that time from the Court. Although the Court seriously doubts that Defendants received no notice of filings or proceedings during that eight-month period, the Court is not prepared to find that Defendants' conduct rises to the level of deliberate bad faith.

To establish that a meritorious defense exists under the second factor, Defendants must allege specific facts that would constitute a defense. *TCI*, 244 F.3d at 700. The Court need not conclude that Defendant will prevail on the alleged defense to determine that this factor weighs in favor of setting aside default. *See Apache Nitrogen Products, Inc. v. Harbor Insurance Co.*, 145 F.R.D 674, 682 (D. Ariz. 1993). Instead, the Court determines "whether there is some possibility that the outcome of the suit after a full trial will be contrary to the

result achieved by the default." *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986) (internal citations omitted).

Defendants have not even attempted to allege a meritorious defense to Plaintiff's action for infringement. In response to Plaintiff's argument that they have no defense, Defendants state, "Defendants believe that the record needs to be developed before the conclusion is made that they do not have a meritorious defense." (Doc. #54, p. 3). They also state that they should not be liable for trademark infringement damages because they have not caused damages. (Id.). Defendant in no way has alleged "specific facts that would constitute a defense." *TCI*, 244 F.3d at 700.

The Court finds that Defendants have not met their burden of showing they have a possible meritorious defense. Because the three "good cause" factors are disjunctive, the district court can deny a motion to set aside default if Plaintiff fails to meet its burden on any of the factors. *Franchise Holding II, LLC. v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004). The Court therefore will not address the prejudice factor and will deny Plaintiff's motion to set aside the entry of default.

### III. DEFAULT JUDGMENT

Plaintiff has moved for default judgment against all Defendants. Plaintiff asks for a permanent injunction against Defendants and for Plaintiff's attorneys' fees. The Court will grant a permanent injunction, but will deny the request for attorneys' fees.

The Court has found that entry of default was properly entered against all Defendants because they have not alleged any specific facts indicating a meritorious defense. The Court further finds that none of the Defendants is an infant or an incompetent person. Fed. R. Civ. P. 55(b)(2). The Court therefore will grant Plaintiff's motions for default judgment against the Defendants, but only to the extent the motions seek a permanent injunction.

Plaintiff has not asked for default judgment damages, but has asked for attorneys' fees pursuant to 15 U.S.C. §1117(a). Section 1117(a) allows a court to award attorneys' fees to the prevailing party in exceptional cases. A case is "exceptional" where the infringement is "willful, deliberate, knowing or malicious." *Earthquake Sound Corp. v. Bumper Indus.*, 352

F.3d 1210, 1216 (9th Cir. 2003).  While this case presents a close call, the Court will not under the circumstances and on the present record award attorneys' fees.  Because Plaintiff has received pro bono representation from its counsel, this will not result in a hardship to Plaintiff.

Accordingly,

IT IS ORDERED DENYING Defendants' Motion for Leave to File Answer Out of Time, And To Set Aside the Entry of Default Judgment (doc. #48).

IT IS FURTHER ORDERED Striking Defendants' Answer (doc. #46).

IT IS FURTHER ORDERED GRANTING Plaintiff's Motion for Default Judgment as to Defendant AZ Opera Company (doc. #41) and Second Motion for Default Judgment as to John and Gail Massaro (doc. #47).

IT IS FURTHER ORDERED DENYING Plaintiff's Motion for Summary Judgment (doc. #42) and Motion for Ruling re Plaintiff's Motion for Summary Judgment (doc. # 50) as moot.

IT IS FURTHER ORDERED GRANTING the following Permanent Injunction in Plaintiff's favor against Defendants AZ Opera Company, John Massaro, and Gail Massaro:

A. Defendants and their agents servants, employees, officers, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, are permanently enjoined from doing the following:

1. Using any name or mark that contains "Arizona Opera," "AZ Opera," and/or any colorable imitations thereof, in advertising, promoting, marketing, offering for sale, or providing any goods, services, or information or in any other way, including, but not limited to, as a corporate name;

2. Obtaining and/or maintaining any registration(s) containing "Arizona Opera," "AZ Opera," and/or any colorable imitation thereof;

    3. Taking any action calculated or likely to induce the belief that Defendants and/or their goods or services are in any way associated, connected, affiliated, licensed, or authorized by Arizona Opera; and

    4. Taking any action likely to dilute, tarnish, or blur the distinctiveness of the Arizona Opera Company or Arizona Opera marks.

B. If the Massaros have not done so already, they shall take immediate steps to amend the Articles of Incorporation to change the name of AZ Opera Company to a name that does not include "Arizona Opera," "AZ Opera,"or any colorable imitation thereof.

C. To the extent that Defendants have placed the AZ Opera Company name or any colorable imitation thereof in business directories or lists, including Internet search engines, the Massaro Defendants shall request all references to such names be deleted.

D. The Massaro Defendants shall notify the "AZ Opera Company's" alleged customers, subscribers, and correspondents, who have done business or communicated with the "AZ Opera Company" during the period the company used the "AZ Opera Company" name of its name change or that it no longer does business under the name.

DATED this 29th day of June, 2007.

*[signature]*
James A. Teilborg
United States District Judge